

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-2514
Re: Whether or not a merchan-
dise display room in which
orders are taken, but which
are filled by the merchan-
dise being sent to the
customer from a warehouse
located elsewhere, are
stores within the meaning
of chain store tax law.

This is in answer to your request for an opinion
concerning the liability of certain mail order establish-
ments for chain store taxes, which reads in part as follows:

"A certain mail order house of the
State of Texas has a number of mail order
houses situated in various sections of the
State in which they have merchandise on
display and also catalogs from which the
orders for merchandise are made. The pur-
chaser may enter the office where the mer-
chandise is on display and select any item
from those on display or from the catalog
and sign an order blank for such merchandise,
the order is then mailed to the office, or
warehouse from which the merchandise is
shipped to the purchaser's address. Or,
in some instances, the merchandise is ship-
ped back to the suboffice and the purchaser
calls for the merchandise and pays for it.
The purchaser may pay for the merchandise
at the time he makes the order.

"We have a number of concerns operat-
ing display rooms in the State of Texas in

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Geo. H. Sheppard, Page 2

which merchandise is displayed. The customer
calls at this place of business, makes a pur-
chase from the merchandise on display, and
later the concern delivers to the customer,
either by its own trucks or by parcel post,
the merchandise purchased.

"Does either of these two places come
within the definition of a store as set out
in the Chain Store Tax Act?"

In your statement of the facts you indicate that
some of the places have, and some do not have, mail order
catalogs which may be used by customers in making merchan-
dise selections. We do not believe that difference in the
places have any effect on the answer to your question. We
also believe that the manner in which the merchandise is
paid for is immaterial in deciding the answer to your ques-
tion.

As to whether or not the display rooms in question
are stores is determined by the definition of the term "store"
in the Texas Chain Store Tax Law (House Bill 18, Ch. 400,
Acts 44th Legislature, First Called Session, 1935. Codified
as Article 1111d, Penal Code), said definition reading as fol-
lows:

"Sec. 7. The term 'store' as used in
this Act, shall be construed to mean and
include any store or stores or any mercan-
tile establishment or establishments not
specifically exempted within this Act which
are owned, operated, maintained, or control-
led by the same person, agent, receiver,
trustee, firm, corporation, copartnership
or association, either domestic or foreign,
in which goods, wares or merchandise of any
kind are sold, at retail or wholesale."
(Underscoring ours)

The part of the definition with which we are con-
cerned says that "the term 'store' * * * shall * * * mean
* * * any store or stores or any mercantile establishment or
establishments * * * in which goods, wares or merchandise of
any kind are sold." Therefore, if these display rooms are
(a) "mercantile establishments" and are (b) places "in which
goods, wares or merchandise of any kind are sold," they are

Honorable Geo. H. Sheppard, Page 3

"stores" within the meaning of the Chain Store Tax Law.

We will first discuss whether or not they are mercantile establishments. The statute includes "any store * * * or any mercantile establishment." By the use of both terms, "store" and "mercantile establishment", the Legislature apparently intended for them to have different meanings. In other words, they do not mean the same thing, but the term "mercantile establishment" means something different than a "store". In the case of Texas Bank & Trust Co. v. Austin, 115 Tex. 201, 280 S. W. 161, the Supreme Court of Texas said:

> "* * * no rule of statutory construction is more universally recognized than that which compels the courts to give some effect to every express declaration of legislative intent. The rule is clearly stated in M. K. & T. Ry. Co. of Texas v. Mahaffey, 105 Tex. 396, 150 S. W. 881, citing Justice Harlan's opinion for the United States Supreme Court in Montclair v. Ramsdell, 107 U. S. 152, 2 S. Ct. 395, 27 L. Ed. 431, where it is said:
>
> > "'It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the Legislature was ignorant of the meaning of the language it employed.'"

In the case of Banks v. State, 28 Tex. 644, the appellant had been convicted of violating the statute making it a felony to steal "any horse, gelding, mare, colt, ass, or mule," and the court held that by using the words "horse" and "mare" the Legislature intended for them to mean different things and that the word "horse" in the statute did not include "mare" even though the term "horse" ordinarily was a generic term that included mare. In that case the court said:

> "* * *. It is our duty to give to the article such a construction as will give effect and meaning to each word as nearly as can be consistently done with the object and purpose of the legislature.
> * * *."

Honorable Geo. H. Sheppard, Page 4

We have been unable to find any Texas case defining the term "mercantile establishment," but we do have a Texas definition of the ordinary meaning of the word "store." In the case of Continental Paper Bag Co. v. Bosworth, 276 S. W. 170, the Commission of Appeals of Texas said:

"In American usage, the word 'store,' when employed to designate a place of business, is a broad one. It signified not merely a warehouse, storehouse, or storeroom, but may include in its meaning <u>a business establishment where personalty is kept and sold, and incidently gotten in salable condition</u>." (Underscoring ours)

Thus we see that a store is "a business establishment where personalty is kept and sold." We believe that the Legislature intended for the term "mercantile establishment" to apply to something different than a store.

The term "mercantile establishment" is defined in 21 Corpus Juris 904, as follows:

"A place where the buying and selling of articles of merchandise as an employment is conducted."

The same definition of a "mercantile establishment" was used in the cases of Continental Baking Co. v. Campbell, 176 Okla. 218, 55 P. 2nd 114. It will be noticed in that definition that it does not say that merchandise is <u>kept</u> and sold in a mercantile establishment as is the case of a store (Continental Paper Bag Co. v. Bosworth, supra), but it only says that buying and selling as an employment is conducted in a mercantile establishment. Therefore, we believe that the fact that the merchandise that is sold is not kept in the place, but that only samples are kept there, does not prevent it from being a mercantile establishment.

We will now discuss whether or not these display rooms are places "in which goods, wares or merchandise of any kind are sold." Ordinarily a sale takes place where title to merchandise passes. We are of the opinion, however, that from a reading of the chain store tax statute in its entirety, it is evident that the Legislature was attempting to tax a place of business at which merchandise was sold,

meaning the place where the transaction took place rather than the place where the actual title to said merchandise passed. As stated in 55 Corpus Juris 36, "However, as used by the authorities, 'sale' is not a word of fixed invariable meaning but may be given a narrow or broad meaning, according to the context or the surrounding circumstances and the conduct of the parties".

In many instances under the facts presented, title to the merchandise did not actually pass except upon delivery. However the transaction of the sale took place at the display or order room. The question then is whether or not the Legislature intended to tax the place of delivery where title passed or rather on the other hand, intended to tax a place of business at which the business transaction took place. We believe it to be the latter.

In this connection it is important to note the language of the Commission of Appeals of Texas in the case of Hurt v. Cooper, 130 Tex. 433, 110 S. W. (2d) 896. In construing the exemption in Section 5 of the Act, which applies to manufacturing concerns distributing products of their own manufacture, the courts stated that such places of business do not come within the affirmative operation of the Act regardless of the exemption. The court said that the "test is whether sales of goods, wares, or merchandise are made at the place." In pointing to places of business at which sales of goods, wares or merchandise are not made at the place, the Court said:

"It may be that some manufacturing concerns maintain bona fide distributing points at which no sales are made, but from which they merely distribute at wholesale to their stores or at retail to purchasers from their sales agents. If so, such business would appear to be within the terms of this provision. Obviously they would not come within the affirmative operation of the statute as we have construed it, and therefore no express exemption was required to relieve them from the burden of the tax."

The language of the Supreme Court above quoted supports our conclusion to effect that the distinction is between a place of business on the one hand which is merely a distributing

Honorable Geo. H. Sheppard, Page 6

point and a place of business on the other hand at which sales of merchandise are made in the sense that the transactions take place therein.

Under such construction, it is our opinion that all of the display rooms mentioned, including those in which the delivery is not made through such display rooms to the purchaser, are mercantile establishments at which goods, wares and merchandise are sold within the meaning of the Texas Chain Store Tax Act, and are therefore subject to the tax.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED AUG 28, 1940

FIRST ASSISTANT
ATTORNEY GENERAL

By Cecil C. Rotsch
        Cecil C. Rotsch
        Assistant

And Billy Goldberg
        Billy Goldberg
        Assistant

BG:RS


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN